Fremont-Smith, Thayer, J.
In my “Memorandum and Order on Pending Motions and Order for Judgment” docketed on February 25, 2008 (the “Order for Judgment”) [23 Mass. L. Rptr. 541] I ruled that the defendants Brenda Cote and NRT New England Incorporated d/b/a Coldwell Banker Residential Brokerage (the “Cote defendants") were responsible for $488,829 in attorneys fees pursuant to G.L.c. 93A, and explained: 
The following orders on the pending post-trial motions and the order for judgment are the end result of a preposterous fraud committed on the plaintiffs. The plaintiffs, who are Russian-born scientists, were shown a condominium on the right hand side of the building, which the broker described to them as Unit A. When they asked for a floor plan, the broker (defendant Cote) provided them a floor plan, which likewise showed Unit A on the right side. Later, the building owner’s manager confirmed the plan, which had been intentionally altered. Plaintiffs were also assured by Cote that the building had no water infiltration problems. Based on those assurances, plaintiffs signed the purchase and sale agreement, after which Perception’s counsel (defendant Lanz) also confirmed the erroneous location of Unit A. They were then given the keys to the right hand unit (which was actually Unit B) and moved in on Christmas Eve, 2004. On December 28, 2004 two other participants in the fraudulent scheme appeared at their door-step and told them that they were occupying what was actually Unit B which one of them already owned, and that they must move into the unfinished left-hand unit (Unit A), which they had actually purchased.
At the close of the liability trial, which ended on April 4, 2007, the jury found Sabrina Lanz and her law firm (the “Lanz defendants”) and Natasha Amitan (who was plaintiffs’ counsel at the real estate closing) liable, and found that Cote, acting as an agent of Coldwell Banker, had intentionally misrepresented to the plain *151 tiffs that there was no water infiltration problem in the building with the intention that plaintiffs rely thereon to their detriment. The jury also found, however, that it was not proven that plaintiffs had reasonably relied therein to their detriment, and awarded no damages.[1]
As the jury had found the Cote defendants not liable. for compensatory damages, and as the Lanz defendants settled with the plaintiffs on October 2, 2007, the only remaining defendant in the trial on damages (which occurred from January 9, 2008 to February 14, 2008), was plaintiffs’ closing attorney, Amitan. Accordingly, the Cote defendants requested to be excused from attending the damage trial, and absented themselves from that trial.
The jury, although finding that plaintiffs had not reasonably relied thereon, found that the Cote defendants had made intentional misrepresentations to the plaintiffs. Accordingly, I found that the Cote defendants as well as the Lanz defendants had violated c. 93A and assessed nominal damages of $25 against the Cote defendants. I also ruled that the Cote and Lanz defendants, who had together defrauded the plaintiffs, were jointly liable for plaintiffs’ reasonable attorney fees under c. 93A.[2].
In my “Memorandum of Decision and Order” docketed on February 25, 2008,1 ruled:
Plaintiffs, in their Request for Attorney Fees and in their supporting Affidavit of Counsel, have requested attorney fees of $586,595. Applying the lodestar method approved by the Supreme Judicial Court, the Court finds that this amount is reasonable. In consideration of the factors set forth in Stowe v. Bologna, 417 Mass. 199, 203-04 (1994), and Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979), the Court finds that each of the factors weighs in favor of awarding the entire requested amount. Not only have defendants’ actions necessitated two lengthy trials, but the issues have been complex and difficult, and have been ably handled by experienced counsel. Accordingly, the Court awards 5/6 of the total reasonable attorney fees of $586,594 or $488,829 to the plaintiffs against the Cote defendants.
In its “Memorandum of Order Pursuant to Rule 1:28" dated February 25, 2010, the Appeals Court affirmed all of my rulings in this case except with respect to its award of attorney fees pursuant to G.L.c. 93A.[3] In that regard, the Appeals Court ordered a remand to this Court, and said (at page 6):
In acting on the plaintiffs motion for attorneys fees, the judge was obliged to make appropriate findings, in applying the lodestar method, to justify an award. [FN9]
[FN 9 Among the guiding factors that a judge normally considers in determining such a fee award are: whether a given counsel’s work was efficient and effective in representing a prevailing party: whether counsel’s hourly rate was reasonable, measured by the skill, judgment, and professional experience that counsel (or a firm) brought to bear in litigating the dispute at hand; and whether the hours billed by counsel were in fact reasonable in the given circumstances. See Fontaine v. Ebtec Corp., 415 Mass. 309, 325-26 (1993).]
“A trial judge, who has had the benefit of appraising, close at hand, the work performed by counsel on behalf of a prevailing party, is obliged (unless excused by stipulation) to make such findings as are appropriate for determining a reasonable fee award, a litigation result not typical to our domestic judicial system. Accordingly, a remand is necessary to permit the trial judge to make and articulate such findings as are called for in these circumstances, in order to insure any final award is the product of exercised discretion conforming to governing legal principles. [FN 10]
[FN 10 We therefore do not opine whether the fee award was in fact outside the range of reasonableness.]
See Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 363 (1997); Berman v. Linnane, 434 Mass. 301, 302-03 (2001); Omar v. Sabbag, 72 Mass.App.Ct. 200, 202-03 (2008), and cases cited. Since a remand is necessary to allow a trial judge to do so, Ross v. Continental Resources, Inc., 73 Mass.App.Ct. 497, 515-16 (2009),FN11. the attorneys fee award memorialized in the judgment dated March 7, 2008, is hereby vacated, and the case is remanded to the Superior Court for further proceedings on that issue consistent with this memorandum.
[FN 11 These cautionary words are particularly apt here. There seems to be no shortage of attorneys who are prepared to litigate; however, attorneys who have the ability or inclination to engage in risk assessment and counsel their clients accordingly do seem to be in short supply . . . Careful and sagacious counseling should act as a prophylactic so that an overreaching and obdurate [party], as here, does not run the risk of a heavy loss that could have been avoided or mitigated by better work from counsel. Ross v. Continental Resources, Inc., 73 Mass.App.Ct. at 517 (Brown, J., concurring).][4]
In their opposition to the plaintiffs’ renewed motion the Cote defendants make the following contentions:
1. Cote’s misrepresentations to plaintiffs denying any water infiltration problem in the building (the “water infiltration” question) were distinct from Lanz’s misrepresentations as to the location of the unit (the “title question”), so the court should apportion the legal fees of plaintiffs between the two distinct issues;
2. A line-by-line examination of the docket and of plaintiffs legal bills reveals that most of the legal work was expended regarding the title question and rela *152 tively little on the water infiltration problem. Therefore, fees should be awarded only for the work of plaintiffs’ attorneys in regard to the water infiltration problem, which was successful in plaintiffs’ recovery of only $25 against the Cote defendants. Accordingly, what defendants compute to be $244,945.10 of plaintiff counsels’ legal work should be deducted from any award of c. 93A attorney fees against them;
3. Plaintiffs legal fees in regard to the compensatory damage trial against Amitan resulting from her negligence should be deducted because the jury had found no compensatory damages against the Cote defendants, who had therefore absented themselves from the damages trial;
4. The Lanz defendants, whose misrepresentations the jury found to have caused injury to plaintiffs, had settled with the plaintiffs before the damage trial for $150,000, which settlement was stipulated by the settling parties to cover Lanz’s liability for c. 93A damages and counsel fees as well as for compensatory damages, so that at least a part of the $150,000 paid to plaintiffs by the Lanz defendants should operate to reduce Cote’s share of the joint liabiliiy of Cote and Lanz for c. 93A attorney fees; and
5. The disparity between the amount of plaintiffs’ alleged attorney fees of $586,595 with the actual recovery against the Cote defendants ($25) should require a drastic reduction in Cote’s liabiliiy for attorney fees.
Defendants’ Contention No. 1
As for contention No. 1 (that plaintiffs’ counsel’s work on Cote’s misrepresentations regarding the water infiltration issue should be separated out so as not to charge the Cote defendants for counsels’ work on the title misrepresentations by the Lanz defendants), at the conclusion of the liability phase of the trial, the jury specifically found that, with regard to the history of water infiltration at the properly, Brenda Cote, (1) supplied “false information to the plaintiffs or to their attorney which a reasonable person would consider important in the circumstances in making the decision whether to purchase a condo unit as a home”; (2) “kn[e]w the information was false, or recklessly disregard(ed) whether it was false”; and (3) “kn[e]w or intend [ed] that the plaintiffs would rely upon the false information.” The jury further found that Cote had supplied false information to the plaintiffs concerning the location of the condo unit in the building, but had not been aware that it was false (jury “special verdict” dated April 4, 2007). With respect to c. 93A, the Court found (and finds again) that the actions of the Lanz and Cote defendants were all inextricably intertwined and were part and parcel of the same intricate, dishonest scheme which bamboozled the plaintiffs into purchasing the condo unit.[5] In these circumstances, no apportionment is necessary or even possible.[6] See Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 430 (2005) (the trial judge “determined that the common-law claims and the claims under G.L.c. 93A were largely predicated on identical facts, and thus that the legal effort to establish the two classes of claims was virtually the same”); Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 682 (1986) (holding that the tor-tious interference claim was so “intertwined factually with the merits of the claim under c. 93A that the judge would not have been required to segregate out more than a nominal portion of total hours expended ... in arriving at an appropriate attorneys fee”); see also Gum v. Oak View, LLC, 2001 WL 170458 *7 (Mass.Super. 2001) (Botsford, J.) (refusing, for purposes of attorneys fee award under c. 93A, to separate out attorney time spent on unsuccessful claim which was “completely interwoven” with successful claims in a suit concerning “a real estate sale gone awry”).
Moreover, where claims arise from a single chain of events, or where there is a core theory which governs all of the claims, apportionment of the legal effort among the different claims is not necessary. Office One, Inc. v. Lopez, 437 Mass. 113, 126, n. 17 (2002); see also System Management, Inc. v. Loiselle, 154 F.Sup.2d 195, 209-10 (D.Mass. 2001).
Defendants’ Contention No. 2
As for contention No. 2 (that a line-by-line examination of the docket and of plaintiffs’ bills shows that substantially more work was performed by plaintiffs’ counsel on misrepresentations regarding title than on those regarding water infiltration) the answer is the same. The misrepresentations of Cote and Lanz were inextricably intertwined so as to lure the plaintiffs to buy the wrong unit. Had this not occurred, the lawsuit would never have been necessary.
Defendants similarly suggest that a court should analyze each line of the docket and each line of a plaintiffs counsel’s bills to determine which activities of counsel were “successful.” The docket contains more than 200 entries, and, even if feasible, no such line-by-line analysis is required. Thus, in one of the cases cited by the Appeals Court in its Order of Remand, Berman v. Linnane, 434 Mass. 301 (2001) the Court there said, at 302-03:
When determining a reasonable attorneys fee, the focus is not the bill submitted, as Berman and Marcus suggest, or the amount in controversy, as Linnane suggests, but several factors, including “the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979). No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required. See Margolies v. Hopkins, 401 Mass. 88, 93 (1987). Here, the judge considered those factors *153 on which evidence was presented, as well as his experience from the trial. He was not required to review and allow or disallow each individual item in the bill but could consider the bill as a whole.“ (Emphasis added.)
Throughout this long and arduous litigation, the Cote defendants filed innumerable motions and objections at every turn. After examining the docket, I find that substantially all of plaintiffs’ attorney time spent on the case was necessary and in the circumstances reasonable and that the hourly rates charged by plaintiffs’ attorneys were also reasonable for attorneys of their experience and excellent abilities.[7] See the Affidavit and the Supplemental Affidavit of Jonathan Fitch filed April 16, 2010. Plaintiff counsels’ unsuccessful efforts to settle the case and otherwise to mitigate damages are detailed in the Fitch affidavit dated January 28, 2008, and the plaintiffs’ “Request after Remand for Findings of Fact and Rulings of Law," pp 9-15, which the Court adopts. In particular, I find that the plaintiffs’ two attorneys from Sally & Fitch LLP divided responsibilities appropriately in a way that would be as cost effective as practicable. Jonathan Fitch, the managing partner of Sally & Fitch LLP, who spent the majority of his time on this case overseeing its progress, and preparing for and attending trial and related motion sessions, began his legal career at the Boston law firm of Bingham, Dana & Gould in 1982. He has held an “AV" peer-rating the highest rating of legal ability and ethics, from the Martindale-Hubbell Law Directory, since 1985.
Sally & Fitch attorney John Miller has been practicing law since 1994 and practiced for eight years at one of Boston’s larger firms, Mintz, Levin, Ferris, Glovsky and Popeo, P.C., before joining Sally & Fitch in 2004. He was primarily responsible for drafting all pleadings including the Complaint, discovery requests and responses, motions and oppositions. He also took or attended most of the non-expert depositions, and participated in all phases of the trial of the case.
I further find that the plaintiffs’ counsel regularly adjusted their time records, cutting out substantial hours from their bills for unexpected inefficiencies or duplicative tasks. I credit Fitch’s affidavit and the accompanying records, that a substantial amount of attorney time was simply written-off and not billed as an accommodation to the client. For example, Fitch substantially reduced the bill for March 2007, which was the month the liability phase trial began, writing off 44.5 hours of his own time and 24.7 hours of Mr. Miller’s time. In addition, the plaintiffs’ counsel have made no claim for their time spent preparing their fee request or the associated affidavit, and those adjustments are reflected in the plaintiffs’ submissions. Overall, the Court is satisfied that the hours actually claimed in the fee request are the product of a careful, conservative and accurate accounting of time reasonably spent pursuing the plaintiffs’ claims.
Given the length of the two trials in this case and the complexity of the issues, it was reasonable and appropriate for Fitch and Miller both to participate in the trials. The Court notes that other parties in this case brought two attorneys to try the case. Sally & Fitch LLP charged $350 an hour for Fitch’s time throughout this litigation and continued to charge the plaintiffs that rate even though Fitch’s usual hourly rate increased to $375 an hour on January 1, 2007 and to $400 an hour on January 1, 2008. Similarly, Sally & Fitch LLP charged $235 per hour for Miller’s time throughout this case even though his usual hourly rate on other matters at Sally & Fitch ranged from $250 to $325 during the time he worked on this case.
I also credit Fitch’s statement in his affidavit that, as managing partner of his firm, he stays abreast of the rates charged by lawyers in Boston of similar experience and professional standing to those in his firm, and his statement that the rates charged in this case compare favorably. Based upon this and my personal knowledge of rates charged by partners in large Boston law firms, I find that the hourly rates charged by the plaintiffs’ attorneys in this case compare favorably to the average rates charged in the Boston legal market by attorneys of similar standing and experience. Overall, the rates charged by the Sally & Fitch LLP attorneys in this case are fair and reasonable as measured by the skill, judgment, and professional experience Fitch and Miller brought to bear in litigating the dispute at hand, and I so find. See Fontaine v. Ebtec Corp., 415 Mass. 309, 325-26 (1993).
Defendants’ Contention No. 3
Defendants contend that plaintiff counsels’ time expended at the Amitan compensatory damage trial should be omitted. The response to defendants’ contention No. 3 is similar to that of Nos. 1 and 2. The Cote defendants had already been found by me to have violated c. 93A and to be jointly responsible with the Lanz defendants for plaintiffs’ reasonable attorney fees under c. 93A. As noted by me in my Order, it was the joint unfair and deceptive actions of the Cote and Lanz defendants which misled the plaintiffs into purchasing the wrong unit, which necessitated all of the subsequent litigation, including the damages trial. The Cote defendants cannot fairly claim by having chosen to absent themselves from the damages trial, that the damages trial was not necessitated by their unfair and deceptive acts. See also p. 11 and footnote 9, infra.
Defendant’s Contention No. 5
Plaintiffs contend that the fee award should not be disproportionate to the damages received against Cote ($25). But the amount of compensatory damages recovered by plaintiffs from the Cote defendants ($25) is not the relevant yardstick for the amount of c. 93A liability for attorney fees. The jury found that plaintiffs were injured by the difference in value of what they *154 received and what they bargained for, in the sum of $576,385.32.[8] This figure, rather than just $25, is the amount of damages that resulted not just from Amitan’s negligence, but as the direct result of the Lanz-Cote unfair and deceptive course of conduct.[9]
The Cote defendants were found by me to have violated c. 93A and to be jointly responsible with the Lanz defendants for plaintiffs’ reasonable attorney fees under c. 93A, because it was the joint unfair and deceptive actions of the Cote and Lanz defendants which misled the plaintiffs into purchasing the wrong unit necessitating all of the subsequent litigation including the damages trial. Accordingly, the Cote defendants cannot now fairly claim that the resulting $576,385.32 in damages suffered by the plaintiffs was not a result of the defendants’ unfair and deceptive acts but was only the result of Amitan’s negligence. In short, the Court does not consider the amount of attorney fees awarded against the Cote defendants ($511,595) to be unreasonable in relation to the result achieved for the plaintiffs ($576,385.32 in damages).
Defendants’ Contention No. 4
I do agree with the Cote defendants, however, that my previous allocation of attorney fees based on the number of defendants in the case, was unwarranted, and also agree that the Cote defendants should be credited with some part of the amount of the Lanz $150,000 settlement, which was stipulated to satisfy c. 93A damages and c. 93A counsel fees as well as compensatory damages.
Accordingly, I find that the Cote defendants’ liability for reasonable attorney fees should be reduced by 50% of the settlement amount, which I allocate to settlement of the c. 93A issues. This results in a $75,000 reduction of the fee award from $586,595 to $511,595.
Plaintiffs argue that, as I had previously set off the entire Lanz settlement of $150,000 in reduction of the judgment against Amitan, I cannot now set off $75,000 of that settlement again to reduce the fee owed against Cote. I do not agree. Plaintiffs did not object at that time that some of the Lanz settlement should have been credited to the Cote defendants rather than to Amitan, and, in my judgment, the Cote defendants should not be penalized now because the Court was not requested to make such an allocation of the $150,000 settlement at that time. Nor can a fee award of $511,595 be considered by the plaintiffs to be unfairly low.
“It is the function of [Mass. Rules of Civil Procedure] rule 60(b)(6) ‘to preserve the delicate balance between the sanctify of final judgments . . . and the incessant command of the court’s conscience that justice be done in light of all the facts.’ ” Winthrop Corp. v. Lowenthal, 29 Mass.App.Ct. at 188, quoting from Freitas v. Freitas, 26 Mass.App.Ct. 196, 198 (1988) (emphasis original). Although “[rjelief under rule 60(b)(6) requires compelling or extraordinary circumstances,” Freitas v. Freitas, 26 Mass.App.Ct. at 198; Bromfield v. Commonwealth, 400 Mass. 254, 257(1987), “courts should keep in mind the purpose of the rule to accomplish substantial justice.” Freitas v. Freitas, 26 Mass.App.Ct. at 198. Parrell v. Keenan, 389 Mass. at 815-16. In my view, an allocation of one-half of the Lanz settlement to the award of attorney fees accomplishes this objective.
ORDER
Accordingly, this Court, after careful consideration of all of the cases cited by the Appeals Court in its Remand Order and the factors set forth in Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979), awards reasonable attorneys fees to the plaintiffs under c. 93A in the sum of $511,595 against Brenda Cote and Coldwell Banker Residential Brokerage, NRT New England Incorporated, which amount shall be paid to Oleg and Alla Batishchev within 30 days.

 The juiy apparently believed that plaintiffs’ closing attorney, Amitan, should have detected the fraud and advised plaintiffs thereof at or before the closing, so that her negligence was the sole proximate cause of their injury. I had reserved the c. 93A issues to the Court, and found (and after review, find again) that, for purposes of c. 93A, Cote’s misrepresentations were an additional proximate cause of the plaintiffs’ injuries.

 At the close of the liability trial I had directed a verdict in favor of Amitan as to the c. 93A claim against her.

 The Appeals Court did not disturb my award to the plaintiffs of $48,264.62 for costs but vacated only “so much of the judgment dated March 7, 2008, as awards attorney fees.”

 This is not such a case. See footnote 7, p. 8 infra.

 In this regard, the Court is not bound for purposes of c. 93A by any jury finding which might be interpreted to have made such a differentiation. See 35 Mass. Practice “Consumer Law” ¶4:48, pp 328-29, and cases there cited.

 If the c. 93A claim is “interconnected factually with the other claims, apportionment of the attorney’s time and effort is not practical and is not required.” Id., ¶4:67, pp 361-62 and cases there cited.

 This is not a case such as Ross v. Continental Resources, Inc., 73 Mass.App.Ct. 497, 517 (2009), cited by the Appeals Court, in which a litigant, in pursuit of “a marginal claim for $15,000,” sought an award of over $60,000 in legal fees. Here the plaintiffs’ legal claims were substantial and proved to be entirely legitimate.

 The jury apparently credited the testimony that, because of the water infiltration and legal problems regarding the building, the condo unit lacked any substantial value.

 In retrospect, in view of my finding that Cote’s misrepresentations were a proximate cause of injury to plaintiffs for purposes of c. 93A, I should have advised Cote’s counsel to attend the trial as the jury award of damages against Amitan might be considered by me to constitute an advisory finding for an award of c. 93A compensatory damages against the Cote defendants as well.