JOHN C. TAYLOR *vs.* MARGARET M. BURKE.

No. 05-P-1433.

Essex. September 13, 2006. - May 17, 2007.

Present: RAPOZA, C.J., GELINAS, & GRAINGER, JJ.

*Landlord and Tenant,* Security deposit. *Statute,* Construction.

This court remanded a matter to the trial court for the taking of additional testimony and evidence, where the judge's sparse findings were insufficient to permit the conclusion that the statute in question had been violated. [79]

This court concluded that G. L. c. 186, § 15B, which governs the handling of a tenant's security deposit by a landlord, requires the landlord to hold the deposit in an account that has been opened in a bank in the Commonwealth. [79-86]

CIVIL ACTION commenced in the Northeast Division of the Housing Court Department on January 5, 2004.

The case was heard by *David D. Kerman,* J.

*John C. Taylor,* pro se.

GELINAS, J. The plaintiff, John C. Taylor (tenant), rented premises at 18 Cloverhill Drive in Chelmsford from the defendant, Margaret M. Burke (landlord). The tenancy involved a lease of one year, from December 1, 2002, through November 30, 2003. After the tenancy ended, and the tenant had left the premises, he brought a complaint in the Housing Court, seeking to recover his security deposit of $1,700, plus $34 in interest. The tenant also claimed treble damages, costs, and interest, alleging that the landlord had deposited the security deposit in an out-of-State bank and failed to return the deposit on the tenant's demand, in violation of G. L. c. 186, § 15B,[1] as appearing in

[1]Subsection (3)(*a*) of this statute provides: "Any security deposit received by such lessor shall be held in a separate, interest-bearing account in a bank, located within the commonwealth under such terms as will place such deposit

St. 1978, c. 553, § 2. The landlord filed a counterclaim for waste.

After trial, a judge in the Housing Court concluded, "on disputed facts and conflicting testimony," that the tenant had not shown any violation of G. L. c. 186, § 15B.[2] The judge found that, "[a]lthough the tenant's . . . deposit . . . was physically made at a branch office of the Citizens Bank located in New Hampshire, the Citizens Bank was and is a bank doing business and with branch offices in Massachusetts." Finding no violation of G. L. c. 186, § 15B, with regard to the deposit, the judge went on to consider the landlord's counterclaim, found that she had proved waste damages beyond normal wear and tear in the sum of $3,303.80, deducted the $1,700 security deposit from that amount, and entered judgment against the tenant in the amount of $1,603.80.

---

beyond the claim of creditors of the lessor, including a foreclosing mortgagee or trustee in bankruptcy, and as will provide for its transfer to a subsequent owner of said property. A receipt shall be given to the tenant within thirty days after such deposit is received by the lessor which receipt shall indicate the name and location of the bank in which the security deposit has been deposited and the amount and account number of said deposit. Failure to comply with this paragraph shall entitle the tenant to immediate return of the security deposit."

Subsection (6) further provides: "The lessor shall forfeit his right to retain any portion of the security deposit for any reason, or, in any action by a tenant to recover a security deposit, to counterclaim for any damage to the premises if he: (*a*) fails to deposit such funds in an account as required by subsection (3) . . . ."

Subsection (7) provides, in relevant part, that on a violation of subsection (6)(*a*), "the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such payment became due, together with court costs and reasonable attorney's fees."

[2]The record is sparse. No subsidiary findings were filed by the judge. The tenant's brief offers no recitation of the evidence underlying the judgment. No brief or motion was filed in this court on behalf of the landlord. The record here reveals only a letter from the landlord's counsel, indicating that his office would not be appearing on behalf of the landlord, and that the landlord would be appearing pro se. The court notified counsel that, pending receipt of a motion to withdraw, indicating service upon the client and disclosing the client's address, counsel would remain of record. No such motion was filed. Just prior to oral argument, counsel presented a handwritten request to address the court. The request was denied after consultation with the tenant, who objected to the request.

The tenant appeals, claiming that, as matter of law, the deposit made to the Citizens Bank in New Hampshire was a violation of G. L. c. 186, § 15B(3)(*a*). He also claims that because the landlord failed to return the tenant's deposit on his demand, the landlord's counterclaim for damage to the premises is prohibited by G. L. c. 186, § 15B(6), and the tenant is entitled to treble damages, interest, costs, and attorney's fees pursuant to G. L. c. 186, § 15B(7).

We remand in order that the trial judge make appropriate subsidiary findings, taking such additional testimony and evidence as in his view might be required. The case was heard by a judge sitting without a jury. Rule 52(a) of the Massachusetts Rules of Civil Procedure, as amended, 423 Mass. 1402 (1996), requires that, where a judge sitting without a jury is the finder of fact, the judge must "find the facts specially and state separately [his] conclusions of law thereon." These findings must contain "as many of the subsidiary facts as are necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Rapp* v. *Barry*, 398 Mass. 1004, 1004 (1986), quoting from *Denofre* v. *Transportation Ins. Rating Bureau*, 532 F.2d 43, 45 (7th Cir. 1976).

Here, while the trial judge indicated in his decision and order that the facts were disputed and the testimony was conflicting, he determined that the security deposit was deposited at a branch office of the Citizens Bank located in New Hampshire, and that, as the Citizens Bank was, and is, a bank doing business and with branch offices in Massachusetts, there was no violation of the statute. We think these sparse findings insufficient to permit the conclusion that the statute had not been violated.

We think it important as well to give guidance with respect to the statute as affecting any ultimate resolution of the case below. The statutory language governing security deposits requires that "[a]ny security deposit received by [a] lessor shall be held in a separate, interest-bearing account in a bank, located within the commonwealth under such terms as will place such deposit beyond the claim of creditors of the lessor . . . ." G. L. c. 186, § 15B(3)(*a*). Statutory interpretation is a question of law for the court, and we think that the statutory language here requires

that both the bank and the account be located within the Commonwealth.

We reach this conclusion by interpreting the statute "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *O'Brien* v. *Director of the Div. of Employment Security*, 393 Mass. 482, 487-488 (1984), quoting from *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360, 364 (1975). See *Annese Elec. Servs., Inc.* v. *Newton*, 431 Mass. 763, 764 n.2 (2000).

We look first to the language of the statute itself. "Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense." *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006). See *Adamowicz* v. *Ipswich*, 395 Mass. 757, 760 (1985) (courts will not interpret a statute so as to render any portion of it meaningless; a construction that would defeat the legislative purpose will not be adopted "if the statutory language is fairly susceptible to a construction that would lead to a logical and sensible result" [quotations and citation omitted]).

Consideration of the grammatical construction of G. L. c. 186, § 15B(3)(*a*), reveals the following. The introduction of a comma after the phrase "interest-bearing account in a bank," separating that phrase from the following modifier "located within the commonwealth under such terms . . . ," provides some indication of legislative intent. The phrase following the comma, concerning location, is immediately adjacent, without separation, to the terms on which the deposit should be held, and permits a reading such that the entire phrase relates back to the phrase "interest-bearing account in a bank," thus directing that the location of the account, as well as of the bank, be in the Commonwealth. In order that the location modifier refer to "bank," and not to "interest-bearing account," the comma might well have been placed after "located within the com-

monwealth"; thus, the phrase "in a bank located within the commonwealth, under such terms . . ." would require only that the bank be located in Massachusetts.

We recognize that ordinarily, in the interpretation of statutes, "matters of punctuation are not necessarily determinative," *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 432 (1983), as punctuation may represent a preference in style and not the considered judgment of the legislature, *Commonwealth* v. *Maillet*, 400 Mass. 572, 578 (1987), nor be indicative of legislative intent, *Commissioner of Rev.* v. *Dupee*, 423 Mass. 617, 621 (1996). Punctuation, however, may be considered as an indication of the purpose of the legislation where different readings might result in ambiguity. See *Greenough* v. *Phoenix Ins. Co.*, 206 Mass. 247, 252 (1910).

Even though the rules regarding the use of commas are flexible and often not applied in consistent fashion, and there is no uniform standard with respect to the use of commas in current English grammar, see, e.g., Fowler, A Dictionary of Modern English Usage 587-588 (2d ed. 1965); Evans & Evans, A Dictionary of Contemporary American Usage 102-103 (1957), the comma is often used to separate ideas or elements within a sentence, see, e.g., Webster's Third New Int'l Dictionary 455 (1993); Shertzer, The Elements of Grammar 87 (1986), and to provide for the separation of an adjectival modifier from the noun modified, *ibid.* Here, modification of "interest-bearing account," rather than "bank," permits an unambiguous reading of the entire phrase "located within the commonwealth under such terms . . . ."

We are also aware of the principle of statutory construction known as the "last antecedent rule," which may be used to resolve an ambiguity in the statutory language. The last antecedent rule is a "general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Hopkins* v. *Hopkins*, 287 Mass. 542, 547 (1934). While one might argue that this rule requires "bank" to be the last antecedent, and thus the proper subject of the modifying clause, we conclude that both the subject matter and the dominant purpose

require a reading such that the entire clause modify "interest-bearing account in a bank" rather than just the last antecedent, "bank."

As with other canons of construction, the last antecedent rule is not always outcome determinative. See *Selectmen of Topsfield* v. *State Racing Commn.*, 324 Mass. 309, 312 (1949). Our interpretation is buttressed, however, by a reading of the statute in conjunction with G. L. c. 186, § 15B(1)(*e*). This section provides: "A security deposit shall continue to be the property of the tenant making such deposit . . . ." The affidavit from the bank, giving the full name of the bank as the Citizens Bank of New Hampshire, and the location of the account, in Amherst, New Hampshire, mentions nothing with respect to this bank's relationship with any bank in Massachusetts, or whether the subject bank has branches in Massachusetts. Further, the affidavit, the record, and the findings are silent as to which State law governs the relationship of accounts and deposits to the bank with depositors and with third parties. See, e.g., *Pappalardo* v. *Bank of Boston, Essex, N.A.*, 133 N.H. 855 (1991) (New Hampshire court applied New Hampshire law in determining that deposit in Massachusetts branch of bank did not come under rubric of "goods and chattels" subject to distraint).

Even were we to assume the judge's finding that Citizens Bank has branches in Massachusetts, on the basis that a judge's ultimate findings of fact can import the requisite findings of subsidiary fact necessary to support those ultimate findings, see *Jones* v. *Clark*, 272 Mass. 146, 149 (1930), the lack of specific findings here would leave us far short of the necessary information to conclude that the statute was not violated. For example, the State in which the deposit is made may have laws mandating that deposits made in branch banks in their State are governed by the law of the State where the bank is located rather than those of the State of the deposit owner. See, e.g., Fla. Stat. ch. 655.55(1) (2006).[3] Our court has recognized as much, see *Florio* v. *Florio*, 445 Mass. 1004, 1006-1007 (2005)

---

[3]This statute provides in pertinent part: "The law of this state . . . governs all aspects, including without limitation the validity and effect, of any deposit account in a branch or office in this state of a deposit or lending institution, . . . regardless of the citizenship, residence, location, or domicile of any other

("Unlike Massachusetts, Florida has a statute governing choice of law in connection with bank accounts. In these circumstances, we are not persuaded that Massachusetts law applies to the determination of ownership of the funds in the Florida account" [citations omitted]).

It is worthy of note that, although most case law dealing with State situs of accounts relates to issues surrounding jointly held accounts, see, e.g., *White* v. *Toney*, 37 Ark. App. 36, 40 (1992), the Florida statute, *supra*, is not limited in application to joint accounts but purports to govern all deposits made in Florida. With the growth in national banks, and the ease and popularity of travel and residence in Florida, it is not beyond imagination that a landlord might attempt to deposit the tenant's security deposit in the Florida branch of a national bank that has branches in Massachusetts as well, thus conceivably putting the deposit under the rule of Florida law.

Moreover, New Hampshire has laws somewhat different from Massachusetts in the governance of tenants' security deposits. See N.H. Rev. Stat. Ann. § 540-A:6, 7 (Supp. 2006). While the New Hampshire law might offer similar protection, it should not be the tenant's obligation to seek compliance with New Hampshire law governing the deposit, or to have to litigate any matter regarding whether New Hampshire or Massachusetts law applies.

To read the language of § 15B(3)(*a*) as requiring only that the depository bank be in some way connected to a bank of the same name located in the Commonwealth, or with branches in both States, would put the tenant, as owner of the account, to a possibly detailed investigation as to whether deposits to the institution in one State were fungible, that is, available to the tenant, or to simple court process in Massachusetts, through one of the branches of a bank of the same name, a burden not contemplated by the statute. We think rather that the burden of

party to the contract or agreement governing such deposit account, and regardless of any provision of any law of the jurisdiction of the residence, location, or domicile of such other party, whether or not such deposit account bears any other relation to this state, except that this section does not apply to any such deposit account: . . . (b) To the extent that all parties to the contract or agreement governing such deposit account have agreed in writing that the law of another jurisdiction will govern it."

demonstrating strict compliance with the statute in this regard, in a trial such as this, rests with the landlord, and is accomplished only if the tenant's security deposit account is opened in a bank in Massachusetts.

The over-all legislative intent of the statute is amply demonstrated to be the protection of the tenant. The legislative history of amendments to the statute evince an increasing concern for the tenant. As of 1969, § 15B merely stated that a lessor could not require a security deposit in an amount in excess of two months' rent. St. 1969, c. 244, § 1. The following year, the Legislature added a penalty of double damages for the wilful withholding of a tenant's security deposit. St. 1970, c. 666, § 1. The requirement that there be a wilful violation of the statute for an award of multiple damages was deleted by the Legislature in 1972, and has not been reinserted despite substantial changes in the legislative controls on security deposits. Specific proposals presented to the Legislature in 1972 demonstrate that the deletion of the requirement of a finding of bad faith was not accidental. A number of bills before the Legislature that year contained provisions retaining the bad faith requirement for damages for improper retention of security deposits, which the Legislature declined to adopt. See 1972 House Doc. Nos. 248, 1676, 3122. See generally *Mellor* v. *Berman*, 390 Mass. 275, 282 (1983).

It is well established that "[t]he security deposit provisions of G. L. c. 186, § 15B, are designed to insure that tenant monies are protected from potential diversion to the personal use of the landlord, earn interest for the tenant, and are kept from the reach of the landlord's creditors." *Neihaus* v. *Maxwell*, 54 Mass. App. Ct. 558, 561 (2002). To these stated purposes, our courts have found it appropriate to add that the provisions are designed to recognize the ownership of the deposit by the tenant and the landlord's duty to hold the monies in trust. See *Hampshire Village Assocs.* v. *District Ct. of Hampshire*, 381 Mass. 148, 152, cert. denied sub nom. *Ruhlander* v. *District Ct. of Hampshire*, 449 U.S. 1062 (1980) (security deposit remains at all times the money of the tenant to be held by the landlord in trust in an interest-bearing account). These protections are best accomplished by requiring that the account be located in the Com-

monwealth, subject to the laws of the Commonwealth, and amenable to easy access by the tenant through local court process, should the need arise.

Moreover, a separate statute governing deposits to accounts in Massachusetts deals specifically with landlord security deposits. General Laws c. 167D, § 32, allows banks to receive deposits from a landlord acting as a trustee for funds received and held by the landlord pursuant to G. L. c. 186, § 15B(3)(*a*), with the requirement, among others, that the terms of the account place the deposit beyond the claims of the landlord's creditors.[4]

We note as well that a deposit in an account in an out-of-State bank could possibly constitute a violation of G. L. c. 93A. See 940 Code Mass. Regs. § 3.17(4)(d) (1993) (failure to place security deposit in separate interest-bearing bank account is an unfair and deceptive act or practice under G. L. c. 93A).

We recognize the possibility that funds deposited out of State, to an account opened in an out-of-State branch of a regional or national bank having branches in Massachusetts, may generally be available through a Massachusetts branch of that bank, and that it might be possible to create such account in a way that it would be subject to Massachusetts law and the provisions of G. L. c. 186, § 15B; however, we conclude that it would be for the Legislature, after an examination of the complex rules governing interstate banking and their branches and accounts, to determine whether and upon what conditions such accounts would satisfy the requirements of the statute.

---

[4]General Laws c. 167D, § 32, as amended by St. 1983, c. 590, § 2, provides: "Any bank or federally-chartered bank may establish an account to receive deposits from a lessor acting as a trustee for funds received and held by such trustee pursuant to paragraph (*a*) of subsection (3) of section fifteen B of chapter one hundred and eighty-six. Such account may be established as required by said section fifteen B for the purpose of holding security deposits taken by a lessor of residential dwelling units owned or managed by said lessor, but the terms of said account shall be such as to place said deposit beyond the claim of a creditor of the lessor, including a foreclosing mortgagee or trustee in bankruptcy, and as will provide for the transfer of said deposit to a subsequent owner of any property for which such security deposit was taken. Interest accruing on said deposit shall be paid to the lessor pursuant to the terms of the deposit. Withdrawals and payments made by the corporation from said account shall discharge the liability of said corporation to all persons."

For all of the above reasons, we conclude that the legislative intent here is to require that security deposits governed by G. L. c. 186, § 15B(3)(*a*), be held in an account that has been opened in a bank in the Commonwealth.

We vacate the judgment and remand the case to the trial court for further findings of fact; the judge may take additional evidence, if he determines that such is necessary. The tenant's request for attorney's fees and costs on appeal is denied.

*So ordered.*