Williams, P.J.
Sea Grass Village is a condominium community in South Dennis consisting of 14 freestanding units and common areas. Following its determination that a unit owner, James S. Bergquist (“Bergquist”), had breached several condominium rules, the Board of Trustees of the Sea Grass Condominium (‘Trustees”) filed this action to collect various expenses and fines and to establish and enforce their lien pursuant to G.L.c. 183A. After a jury had awarded the Trustees money damages, the trial judge decided the issues of the Trustees’ lien priority and their claim for attorney’s fees. The Trustees appeal the trial judge’s decision that their lien, which arises pursuant to G.L.c. 183A, §6 (a) and the Master Deed, is subordinate to a comprehensive permit requiring that several units be affordable and to a regulatory agreement, both of which were recorded before the Master Deed, and to a deed rider recorded thereafter. The Trustees appeal three claimed errors: the trial judge’s failure to assign their lien priority over other perceived encumbrances, his failure to award them attorney’s fees arising from their defense of Bergquist’s administrative discrimination claims, and his failure to order interest on any part of the award. Finally, the Trustees submit that Bergquist’s cross appeal assailing the reasonableness of the attorney’s fees the trial court did award must fail because that award was reasonable and not clearly erroneous. We affirm the trial court’s decision regarding the lien priorities, but return the action to the Orleans District Court for further consideration of the attorney’s fee award and for the assessment of certain prejudgment and postjudgment interest.
*133 Sea Grass Village was established by a Master Deed and a Declaration of Trust recorded on October 7, 2002. The Rules and Regulations that govern aspects of the operation, use, and appearance of the condominiums were recorded with the Trust. Bergquist became the owner of Unit No. 14 on October 11, 2002 as the result of his success in a G.Lc. 40B affordable housing lottery. His deed expressly rendered his ownership subject to the rights and obligations set out in G.L.c. 183A and in the Master Deed and the bylaws filed with it.
In January and February, 2006, two unit owners complained to the Trustees that Bergquist’s yard was unkempt, that he had more pets than permitted, and that his cat was roaming unrestrained. The Trustees asked Bergquist in writing to abide by rules pertaining to those matters, among others. There followed a duel of correspondence. Bergquist warned the Trustees that he would file discrimination claims against them with, among other bodies, the Massachusetts Commission Against Discrimination (“MCAD”).[4]
The Trustees’ theme was that Bergquist’s persistence in violating the rules would render him liable for various fines and costs, including attorney’s fees.
Since Bergquist failed to comply as requested, the Trustees finally, in August of 2006, launched a lien-enforcement action against him pursuant to G.L.c. 183A, §6(c) and Article V, §5.5 of the Trust. They also notified the mortgagee on Bergquist’s unit, Cape Cod Five Cent Savings Bank (“Cape Cod Five”), of their intent to foreclose on the condominium. In order to protect the priority of its mortgage from the condominium’s statutory lien, Cape Cod Five paid the unpaid common area charges along with the attorney’s fees generated by the notice letter.
His attention finally captured, Bergquist began exploring resolution of the dispute. Several months of negotiation followed. It is apparent that Bergquist at times ignored the substance of those negotiations in favor of concentrating on such minutiae as an obvious mistyped date in one of the proposed agreements. Finally, in January, 2007, after Bergquist had neither agreed to settlement terms, nor cured the violations, the Trustees brought this action, seeking unpaid common expenses, fines, interest, and attorney’s fees as well as the establishment of their lien pursuant to G.L.c. 183A, §6. Bergquist counterclaimed, alleging what were eventually framed for the jury as claims for abuse of process and discrimination. He further riposted by filing discrimination complaints with the MCAD and the United States Department of Housing and Urban Development (“HUD”). Both those complaints were dismissed in April, 2007.
The Trustees’ claims for unpaid common area fees and fines, and Bergquist’s counterclaims, were tried to a jury in December, 2007. The jury awarded the Trustees $2,405.61 and found in favor of the Trustees on Bergquist’s counterclaims. After trial, the judge addressed the Trustees’ claims for attorney’s fees and for the establishment of the priority of their lien. In March, and in further orders in April, 2008, the trial judge awarded the Trustees attorney’s fees and collection costs totaling $33,026.93. The total judgment entered was $35,426.93. The court found that Bergquist was personally liable on that judgment under G.L.c. 183A, *134 §6(b), and that that amount constituted a lien upon his unit. The court awarded the Trustees neither legal fees for defending the MCAD and HUD claims, nor interest on any part of the award. Further, the court did not grant the Trustees’ lien the priority they had sought. Pursuant to G.L.c. 183A, §6, the Trustees had asserted that their lien trumped all other “liens and encumbrances” save for Cape Cod Five’s mortgage and such liens as those for real estate taxes and municipal assessments.[5] The court, instead, found that the Trustees’ lien was subject to a Comprehensive Permit (issued under G.L.c. 40B) and a Regulatory Agreement that had been recorded before the Master Deed. The trial judge also made the Trustees’ lien further subject to the “Deed Rider” recorded after Bergquist’s deed. Additionally, he ordered that proceeds of the sale of the unit would be applied to each lien according to the priority established in the judgment, and that any remaining proceeds would be paid to the Trustees, with any excess payable to Bergquist.
1. Lien Priority. The Trustees argue that the trial judge erred when he found that the Comprehensive Permit (issued by the Dennis Zoning Board of Appeals), the Regulatory Agreement between the developer and his bank,[6] and the Deed Rider attached to Bergquist’s deed took priority over the Trustees’ condominium lien. There was no error.
Specifically, the Trustees submit that the trial judge erred as a matter of law because, pursuant to the plain language of G.L.c. 183A, §6(c), which governs the priority of liens (see note 5, supra), it is obvious that their lien takes primacy. There is scant useful authority interpreting §6(c) on this point. Clearly, the Trustees bear the burden of demonstrating on appeal that the trial judge was in error. E.g., Upshaw v. Katharine Gibbs Sch. of Boston, Inc., 63 Mass. App. Ct. 92, 93 (2005). The Trustees’ argument turns on the scope of the meaning of “liens” or “encumbrances” in the section. Nothing contained in the Comprehensive Permit, the Regulatory Agreement, or the Deed Rider constitutes an encumbrance, the Trustees argue, and thus their lien is first in time, except for the mortgage held by Bergquist’s mortgagee, Cape Cod Five. They rely on the general measure of lien priority: “first in time is first in right.” Yung v. Reymonde, 1999 Mass. App. Div. 194, 195. Although the Trustees *135 acknowledge that the Comprehensive Permit (recorded on April 12, 2002) and the Regulatory Agreement (recorded on August 1, 2002) predate their lien, they argue that because neither of those documents constitutes a “lien” or “encumbrance,” neither can tarnish the primacy of their lien, created when the Master Deed was recorded on October 7, 2002. Bergquist’s deed with its rider was recorded four days later, on October 11, 2002.
As to the Comprehensive Permit, the Trustees argue that such a permit is neither a lien, nor an encumbrance, but merely a permit issued by a board of appeals authorizing a developer to construct housing. G.L.c. 40B, §21.[7] As the Trustees recognize, an encumbrance is “[a] claim or liability... attached to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership.” Black’s Law Dictionary 568 (8th ed. 2004). It must exist in favor of another person, rendering the land of less value to its owner. See Kellogg v. Ingersoll, 2 Mass. 97, 101 (1806). As the Trustees further acknowledge, though, the Comprehensive Permit contained numerous conditions, including the restriction that four units of the condominium, including No. 14, Bergquist’s unit, remain “affordable in perpetuity.” See generally Zoning Bd. of Appeals of Wellesley, supra at 814-816. Such conditions, the Trustees submit, cannot constitute encumbrances because they are not interests in land. That view, though, ignores the breadth of the very definition the Trustees offer, which describes “encumbrance” as a “liability ... attached to property or some other right” that renders the property — or the right — less valuable. It is difficult to conceive how the restrictions set out in.the Comprehensive Permit cannot be con *136 sidered as a liability reducing the value of the subject unit — “or some other right,” such as the right to sell the unit at market value. Not only is that restriction a “liability,” but it is also one that represents a patently established public policy of the Commonwealth: fostering the availability of housing to low- and moderate-income homebuyers. Indeed, the Trustees carp that because Unit 14 must remain “affordable in perpetuity,” they are prevented from selling it at market value (which they represent to be about $350,000.00) and thus recouping the bulk of the judgment they secured here. Even more pointedly, the Trustees seem to argue, inconsistently, that the affordability provision in Bergquist’s Deed Rider does constitute “a lien and/or encumbrance” on the unit while the affordability condition in the Comprehensive Permit does not.
Again, we are provided no authority supporting the notion that such conditions do not properly fall under the statutory rubric of “liens or encumbrances.” If the Legislature had wished to limit the scope of that phrase in either the comprehensive permit act or in the even more expansive and detailed condominium statute so as to exclude such situations as this, it could have done so. “We will not add words to a specific statute that the Legislature did not put there, either by inadvertent omission or by design.” Herman v. Admit One, 2008 Mass. App. Div. 125, 127, quoting Simmons v. Clerk-Magistrate of the Boston Div. of the Hous. Court Dep’t, 448 Mass. 57, 64 (2006). See also Bulger v. Contributory Retirement Appeal Bd., 447 Mass. 651, 661 (2006), quoting Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999) (‘Where, as here, the language of the statute is clear, it is the function of the judiciary to apply it, not amend it.”). To assume that the term “encumbrance” would not encompass the liability, the conditions, here that lessen the value of the unit — but that also advance a key public policy of the Commonwealth established by the Legislature in G.L.c. 40B — would be to constrict the term the Legislature chose to use. Alves’s Case, 451 Mass. 171, 176 (2008), quoting Walsh v. Bertolino Beef Co., 16 Mass. Workers’ Comp. Rep. 151, 154 (2002) (“Where there is such a plain and rational meaning to be applied, we are obliged to apply it, rather than set off on an interpretative quest.... ‘[A] basic tenet of statutory construction is to give the words their plain meaning in light of the aim of the Legislature, and when the statute appears not to provide for an eventuality, there is no justification for judicial legislation’” [citation omitted]). In short, the available authority construing the definition of “encumbrance” does not convince us that the trial judge was wrong in concluding that the Comprehensive Permit trumped the Trustees’ lien.
The core of the Trustees’ argument as to the Regulatory Agreement, which sets out certain conditions governing the sale of the affordable units, seems to be that it did not explicitly subordinate the interests of the Trust to any lien or encumbrance, and did not convey anything to the town of Dennis or any charitable organization. We are not persuaded that the trial judge erred in his findings as to the Regulatory Agreement for the reasons set out above as to the Comprehensive Permit, especially in light of our recognition of the policy of the Commonwealth in providing affordable housing opportunities to its citizens.
*137 2. Attorney’s Fees. In his cross appeal, Bergquist, relying broadly on Linthicum v. Archambault, 379 Mass. 381 (1979),[8] attacks the amount of attorney’s fees awarded the Trustees as “grossly excessive.”[9] He highlights both his own efforts to resolve the dispute and, especially, the fact that that fee award came to more than 15 times the jury’s damage award, and thus did not comport with the results the Trustees had obtained. The Trustees’ position is that they are entitled to the recovery of all their incurred attorney’s fees without judicial analysis of whether the claimed fees are reasonable.
At the outset, we reject the notion that a reasonableness standard does not, or should not, apply to the attorney’s fee determination in this action. See G.L.c. 183A, §6 (referring to “reasonable attorneys’ fees”). The Appeals Court recently observed in an unpublished decision, without analysis, that a trial judge had properly rebuffed the same suggestion from a condominium board: that “it was entitled to recover all attorney’s fees related to the collection effort, without a determination as to whether such fees were reasonable.” Board of Trustees of 447 Marlborough St. Condominium Trust v. Corben, No. 08-P-216, at 2 n.2 (Mass. App. Ct. Feb. 2, 2009) (unpublished 1:28 decision). Cf. Robbins v. Krock, 73 Mass. App. Ct. 134, 140 (2008) (provision in promissory note providing for debtor’s liability for “any” attorney’s fees means liability for “ah” attorney’s fees incurred). The attorney’s fee provision here lacks the qualifier “reasonable” and any such qualifier as “any” or “all.” We choose to infer, in the context of this condominium case, in which the attorney’s fee provision appears on page 41 of a 64-page trust document, that a reasonableness standard should apply here, regardless of the absence of the term “reasonable” in the trust document. It might develop, of course, that the trial judge decides that all the fees proffered by the Trustees are reasonable and thus due.
*138 A trial judge enjoys broad discretion in awarding attorney’s fees, and we will reverse such an award for abuse of discretion only if we find it clearly erroneous. E.g., GreatAmerica Leasing Corp. v. Law Office of Donald H. Jackson, Jr., P.C., 2008 Mass. App. Div. 165, 168, citing, inter alia, Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 363 (1997). See also WHTR Real Estate Ltd. Partnership v. Venture Distrib., Inc., 63 Mass. App. Ct. 229, 235 (2005). We do not substitute our judgment for that of the trial judge, to whose firsthand knowledge of the services performed before him we accord due deference. GreatAmerica Leasing Corp., supra, citing, inter alia, Bollen v. Camp Kingsmont, 2000 Mass. App. Div. 56, 57. We note, however, that “[t]he amount of a reasonable attorney’s fee is a fact that should be supported by some statement of reasons illuminating the judge’s fact-finding process.” Ross v. Continental Resources, Inc., 73 Mass. App. Ct. 497, 516 (2009).
Acknowledging that the fees charged by the Trustees’ counsel in this action “seem quite high for the issues and amounts involved,” the trial judge noted that that resulted partially because Bergquist, “trained in the law, [had] put the [Trustees] ‘through hoops’ in an effort to pressure them to cease their legitimate efforts to enforce the condominium rules and regulations.” Indeed, the trial judge found that Bergquist had “deliberately and as a matter of strategy, put the [Trustees] through an unnecessarily extensive effort to pursue this claim.” We cannot determine from those observations, which stand alone without discussion of, say, the factors involved in the familiar “lodestar” analysis, see, e.g., Killeen v. Westban Hotel Venture, LP., 69 Mass. App. Ct. 784, 790-796 (2007) and cases cited, whether the trial judge was punishing Bergquist for his perceived obduracy, or was simply alluding generally to the time and effort the Trustees had been compelled to expend in response to Bergquist's tactics. See, e.g., GreatAmerica Leasing Corp., supra.
In any event, following the lead at Killeen, we are constrained to note that “when a fee request [or, as here, award] appears on its face dramatically disproportionate to the results the litigation produced, as it does here, the judge must focus with precision on the relationship between the time invested and the results achieved in order to insure that the ‘time spent was [not] wholly disproportionate to the interests at stake.’” Id. at 796, quoting Stratos v. Department of Pub. Welfare, 387 Mass. 312, 323 (1982). Indeed, although we acknowledge that “neither the amount of the fee, standing alone, nor the relationship between the fee and damages awarded, by itself, is a basis for vacating the fee award,” id., we are unable in this case to discern whether “the judge’s analysis of the [Trustees’] request for attorney’s fees considered with insufficient precision the relationship between the fee requested and the results the litigation achieved, that is, whether the amount of time spent on the case was reasonable in light of those results.” Id. at 795. We must return this aspect of the case to the trial judge for further orders consistent with this opinion.
In regard to the trial judge’s refusal to award the Trustees attorney’s fees for their defense of Bergquist’s MCAD/HUD discrimination claim, we find no error. The effect of the Trust clause upon which the Trustees rely, §5.13,[10] is to indemnify the Trustees for defense costs in any claim whatsoever brought by a unit owner (or “ten *139 ant, occupant or other such person”) for any behavior whatsoever on the part of the Trustees, including intentional conduct or misfeasance, whether the Trustees prevail in that claim or not. In other words, even if a plaintiff filed, say, a federal civil rights action against the Trustees on egregious facts, and prevailed at trial, that successful plaintiff (who might be awarded attorney’s fees, see 42 U.S.C. §1988 (b)) would nevertheless have to reimburse the Trustees for all their defense costs. Such a result is anomalous.
The fact that Bergquist’s particular claims here fell short — indeed, far short — of victory[11] cannot alter the potentially jarring and unfair effect of the clause the Trustees invoke. We are unpersuaded that the trial judge erred in not awarding the Trustees their defense costs on the agency discrimination claims.
3. Interest. The Trustees claim annual interest in the amount of 18% by the terms of §5.5 (C) of the Trust. That subsection addresses the collection of common expenses, and specifically provides that interest at that rate apply to the assessment of common expenses. Through the application of §5.12 of the Declaration of Trust, “any charge, fine, attorney’s fees or other financial obligation” of any unit owner constitutes a lien on the unit and is made “enforceable to the same manner and extent as for Common Expenses provided for in this Declaration [§5.5(C)j and [G.L.c. 183A, §6].”
The matter of awarding prejudgment interest is one of balancing equities, Siegel v. Berkshire Life Ins. Co., 70 Mass. App. Ct. 318, 322 (2007), citing USM Corp. v. Marson Fastener Corp., 392 Mass. 334, 350 (1984). The mandatory language of G.L.c. 183A compels us to find that the Trustees were entitled to their contractual rate of interest on the jury award, comprising common area fees and fines. G.L.c. 231, §6C; Berish v. Bornstein, 437 Mass. 252, 274 (2002). Prejudgment interest is to be added to awards as of the date of breach or demand, which date is a question of fact for the jury, and neither the trial judge, nor this Division, may make that determination. Berish, supra, citing Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 125 (1986). When the jury does not establish the date of breach or demand, as was the case here, interest is assessed from the date of commencement of the action. G.L.c. 231, §6C. We thus order that interest of 18% be applied to the jury award damages from the date this action commenced, which was January 24, 2007.
The Trustees, though, claim that they are entitled to interest on all aspects of the award, including attorney’s fees. If awarding prejudgment interest is an exercise in balancing equities, Siegel, supra at 322, our sensitivity to that approach is heightened when considering interest on attorney’s fees. A fair reading of the Trust demonstrates that it does provide for interest on an attorney’s fee award. Given the propriety of assessing interest on attorney’s fees in various contexts, see id., citing Patry v. Liberty Mobilehome Sales, Inc., 394 Mass. 270, 272-273 (1985), we do not *140 find that such a contractual provision offends public policy. See, e.g., McLaughlin v. Amirsaleh, 65 Mass. App. Ct. 873, 880-881 (2006) and cases cited. We do, however, adopt the view that “[p] rejudgment interest on attorney’s fees is calculated based on the date on which the expenses were incurred.” Liquor Liability Joint Underwriting Ass’n of Mass. v. Hermitage Ins. Co., 419 Mass. 316, 324-325 (1995), citing Liberty Mut. Ins. Co. v. Continental Cas. Co., 771 F.2d 579, 583-584 (1st Cir. 1985). Cf. University of Mass. Boston v. Massachusetts Comm’n Against Discrimination, No. 07-P-1439, at 5 (Mass. App. Ct. Dec. 26, 2008) (unpublished Rule 1:28 decision) (MCAD awards interest on attorney’s fees and costs from date of filing of petition). We take “incurred” to mean “paid.” Liquor Liability Joint Underwriting Ass’n of Mass., supra at 325. Thus, when the case is returned to the trial judge, he will determine what attorney’s fees are due the Trustees, affording the Trustees the opportunity of offering evidence, presumably by affidavit, as to when those fees were paid so that interest on them can be assessed.
The trial court’s decision on the issue of the lien priorities is affirmed. The case is returned to the Orleans Division of the District Court Department for the trial judge’s further consideration of the attorney’s fee award and for the assessment of interest in accordance with this opinion.
So ordered.

 Bergquist’s discrimination claim was based on his status as the “single dad” of minor children and as the buyer of an affordable home under G.L.c. 40B.

 General Laws c. 183A, §6 (a) (ii) empowers the Trustees to “assess any fees, attorneys’ fees, charges, late charges, fines, costs of collection and enforcement, court costs, and interest charged pursuant to this chapter against the unit owner and such assessment shall constitute a lien against the unit from the time assessment is due, and shall be enforceable as common expense assessments under this chapter.” Pursuant to § 6(c):
“Such lien is prior to all other liens and encumbrances on a unit except (i) liens and encumbrances recorded before the recordation of the master deed, (ii) a first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent, and (iii) liens for real estate taxes and other municipal assessments or charges against the unit.”

 The developer was DeWitt Davenport, Trustee of 729 Route 134 Realty Trust and affiliates of “The Davenport Companies,” and the bank was Cape Cod Bank & Trust.

 The Trustees’ narrow characterization of the Comprehensive Permit is misleading. The Comprehensive Permit allowed the developer to build the project in exchange for a mandate that four condominium units, including the one that became Bergquist’s, remain affordable in perpetuity to low- or moderate-income homebuy-ers, in furtherance of the policy of the Commonwealth of ensuring such housing, as embodied in G.L.c. 40B. Chapter 40B is sometimes referred to as the “anti-snob zoning act.” Wrentham v. Housing Appeals Comm., 69 Mass. App. Ct. 449, 452 (2007), quoting Zoning Bd. of Appeals of Wellesley v. Ardemore Apartments Ltd. Partnership, 436 Mass. 811, 814 (2002). “The primary purpose of the [comprehensive permit] act is ‘to provide relief from exclusionary zoning practices which prevent]] the construction of badly needed low and moderate income housing.’ (Citations omitted.) The act allows a ‘limited dividend organization interested in constructing low or moderate income housing to circumvent the often arduous process of applying to multiple local boards for individual permits and, instead, to apply to the local board of appeals for issuance of a single comprehensive penult.’ (Citation omitted.) ‘In addition to streamlining the permitting process itself, the clear intent of the Legislature was to promote affordable housing by minimizing lengthy and expensive delays occasioned by court battles commenced by those seeking to exclude affordable housing from their own neighborhoods’” (citation omitted). Board of Appeals of Woburn v. Housing Appeals Comm., 451 Mass. 581, 582-583 (2008). See also Hingham v. Department of Hous. & Community Dev., 451 Mass. 501, 502-503 (2008).

 ‘While the amount of a reasonable attorney’s fee is largely discretionary, a judge ‘should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation; and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.’ [Linthicum, supra at 388-389.] ‘No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.’ Berman v. Linnane, 434 Mass. 301, 303 (2001).” Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 429-430 (2005).

 Bergquist does not argue that the Trustees are not entitled to any attorney’s fees at all, the contractual provision of which is enforceable, even in contracts of adhesion. See, e.g., David R. Rykbost Corp. v. O’Connor, 2004 Mass. App. Div. 75, 76. Section 5.13 of the Trust provides in pertinent part:
“In such case as it is necessary for the Trustee (s) to engage the services of an attorney, or attorneys, for the purpose of enforcing against a Unit Owner ... any provision of the Master Deed, the Declaration of Trust, the Rules and Regulations, or obligations there under [sic], and/or for the purpose of defending any action brought by such person (s), said Unit Owner ... shall be liable for, in addition to any other liability, the fees and costs of such attorneys in so proceeding thereto.... “

 See note 9, supra.

 Bergquist filed his MCAD/HUD claim the day after the Trustees filed their action against him in the Orleans District Court (on January 24, 2007), and then recast those claims as a counterclaim against the Trustees when he filed his answer on February 14, 2007. As noted above, the MCAD/HUD claim was soon thereafter dismissed in April, 2007.