Williams, PJ.
Plaintiff-tenants Jennifer Stacy (“Stacy”), Mathew Stacy (“Mathew”), and Brian Mor (“Mor”) brought this action against their landlord, Tony Zhao a/k/a Kun Zhao (“Zhao”), for claimed deficiencies with their apartment. Following a jury-waived trial, the judge found mostly in favor of the tenants on their claims for breach of the implied warranty of habitability, interference with quiet enjoyment, failure to supply hot water, violation of the security deposit statute, violation of G.L.c. 93A, and breach of contract, but for Zhao on their claim of retaliation. Two appeals followed. The first (No. 12-ADMS-40001) by the tenants, concerned only the finding in favor of Zhao on the retaliation claim. The second appeal (No. 12- *60 ADMS-40007), by Zhao, claimed various errors in the trial judge’s findings for the tenants, except on their claim for breach of contract,[5] including an award to them of attorney’s fees. We affirm the decision of the trial judge except as to a duplicative award of damages, which we vacate, his finding in favor of Zhao on the retaliation claim, and his attorney’s fee award. We return the action to Quincy District Court for further findings on the last two issues.
The tenants entered into a one-year lease with Zhao for an apartment in Quincy. The tenancy, which actually began on July 27, 2009, was supposed to run from August 1, 2009 through July 31, 2010, with a monthly rent of $1,600.00. Real estate listings stated that there were two parking spaces for the apartment, and that pets were not allowed. The tenants disclosed to listing real estate agents that they had three aquaria, which contained either fish or otherwise undescribed reptiles and amphibians, and expressed concerns about the limited available parking.
Zhao was aware of the aquaria from the beginning of the tenancy, and also knew that the tenants were parking on the property.
On the first day of the tenancy, the tenants e-mailed Zhao about a problem with the shower door and a noisy bathroom fan. They had also reported a hot water problem by telephone, but informed Zhao he could ignore that call since the problem had been rectified. There followed in August a complaint by the tenants about the window of a downstairs door and another about electrical power disruption because of a problem with two outlets. In a September e-mail, Zhao recognized electrical problems, and some work was performed later that month.
In October, Stacy fell on the back stairs. Although she did not seek medical treatment, she e-mailed Zhao the following day with concerns about the lack of lighting in that area.
Further complaints did not develop until January, 2010, when the tenants e-mailed Zhao about insufficient hot water and a loose lock on the back door. Zhao responded that a flood light had been installed in the back door area and that he would address the hot water and lock issues.
In February, Mathew, although he did not seek medical attention, was shocked when using an electrical outlet. The tenants complained that outlets were not properly grounded, and demanded immediate attention. Zhao advised them that he had engaged an electrician, but asked them to cover any questionable outlets with tape. He suggested to the tenants that it was their “responsibility to safeguard this place” and that they were free to find another place to live. At the tenants’ request, Quincy authorities inspected the apartment and found an insufficient hot water supply, a faulty shower door, a loose rear door lock, and loose Plexiglas in the main front door. Additionally, a Quincy inspector found that two electrical outlets were deficient.
E-mails in late February into March, 2010, evinced an “exceedingly sour” relationship between Zhao and the tenants. The tenants withheld March rent. On March 2, 2010, Zhao notified the tenants by e-mail that they had broken the lease by keeping animals and by parking in the backyard; he warned them to remove the animals immediately and refrain from parking on the property. In a March 4 e-mail, Zhao *61 stated, “as for pet and parking, I’ll let my friends have it, but now I don’t have the reason to do it.” Noting a black Subaru parked on the property on March 11, Zhao emailed the tenants that “it is not the one I usually see. It is not yours, I’ll get it towed now; and if it is yours, please be advised that you are not allowed to park any car in my property.” Zhao took no action, however, as to that car or the aquaria.
Although the tenants signaled that they would pay the withheld March rent when repairs were effected, which occurred on March 11, 2010, they did not do so. On March 8, they had sent a G.L.c. 93A demand letter to Zhao, who made a written tender of settlement on March 18. Further negotiations ensued, until a letter of March 26 from the tenants’ counsel indicated that the letter was “to confirm” the parties’ agreement. The letter mentioned the moving-out date and the return of the security deposit, but was silent as to the rent for March. It also referred to preparing mutual releases. Neither a settlement agreement nor releases were executed.
In April, 2010, the tenants filed this action against Zhao alleging a breach of the implied warranty of habitability, interference with quiet enjoyment, failure to supply hot water, retaliation, violation of the security deposit statute, violation of G.L.c. 93A, and breach of contract. Zhao’s answer contained a counterclaim alleging breach of contract.
In July, 2010, the tenants moved for summary judgment on the security deposit claim, which motion was allowed. In April, 2011, Zhao moved for summary judgment on the ground that the parties had entered into a binding settlement agreement. That motion was denied, and a trial followed. The trial judge awarded the tenants $1,880.00 on their claim for breach of the warranty of habitability, and $1,600.00 on the claim for breach of the covenant of quiet enjoyment, which he trebled to $4,800.00. The judge also found for the tenants on their security deposit claim, assessing damages in the amount of $4,800.00 plus interest, and on their G.L.c. 93A claim, for which he awarded the tenants single damages of $1,880.00. The judge further found that recovery on the tenants’ claim alleging failure to supply hot water would be duplicative of the award for breach of the warranty of habitability. The judge found for Zhao on the tenants’ retaliation and breach of contract claims, but for the tenants on Zhao’s breach of contract counterclaim.
Zhao appealed, and a few days later the tenants moved for an award of attorney’s fees. Judgment was entered in October, 2011, which included attorney’s fees, interest, and costs, in the amount of $38,921.65. The tenants also appealed, claiming they should have been awarded damages for Zhao’s threatened retaliation.
1. Denial of summary judgment for settlement agreement is not appealable. Zhao claims that his motion for summary judgment based on a binding settlement agreement should have been allowed.
The denial of a motion for summary judgment is not appealable following trial. Kelley v. Riccelli Enters. of Mass., Inc., 2010 Mass. App. Div. 81, citing Leavitt v. Mizner, 404 Mass. 81, 87 (1989). ‘The purpose of summary judgment is to bring litigation to an early conclusion without the delay and expense of a trial when no material facts are at issue, and it goes without saying that purpose cannot be served after the case has gone to trial.” Id., quoting Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 126 (1986). A party may seek review of the denial of a motion for summary judgment through an interlocutory appeal only by requesting that a judge report the issue. Dist./Mun. Cts. R. A. D. A., Rule 5. Zhao neither filed such a *62 request nor submitted a proposed conclusion of law to that effect to attempt to preserve the issue after the trial. See Kelley, supra at 82.[6] We therefore do not consider the issue.
2. There was no error in the allowance of the tenants’summary judgment motion on their security deposit claim. Zhao urges that the judge erred in granting the tenants’ motion for summary judgment on their claim of a violation of the security deposit statute, G.L.c. 186, §15B, because he did not in fact mishandle the security deposit. Zhao had given the tenants a letter advising that their security deposit had been “deposited in an E*Trade account with account number ending 8300.” Zhao points out that E*Trade is a federally chartered savings bank, G.L.c. 167D, §32, with a location within the Commonwealth, specifically at 60 State Street, Boston. Additionally, the fact that the deposit receipt that Zhao provided the tenants identified only the last four digits of the account number was simply, he argues, a “technical violation” of §15B that caused no harm to the tenants.
The mandates of §15B are clear, and a landlord, in order to avoid the penalties of the section, must demonstrate strict compliance with those terms. Cote v. Sylvia, 2008 Mass. App. Div. 27, 28, citing Taylor v. Burke, 69 Mass. App. Ct. 77, 83-84 (2007). See generally Lopes v. Williams, 2010 Mass. App. Div. 227, 230-231. Although Zhao might have come closer to satisfying the section than many landlords have, his compliance cannot be said to have been complete. We have been provided no authority suggesting that the existence of mere or harmless “technical violations” would prevent a court from finding as a matter of law that a landlord had indeed breached the statute.
3. The awards of damages for breach of warranty of habitability and for violation of G.L.c. 93A are duplicative. Zhao suggests that the evidence at trial failed to support several parts of the damages award. Noting that the court awarded the tenants $1,880.00 for breach of warranty of habitability and also $1,880.00 for breach of G.L.c. 93A, Zhao argues that the awards are duplicative. When damages are awarded under a common law theory and G.L.c. 93A, those awards must be based on acts that are “factually separable and distinguishable.” Costa v. Brait Bldrs. Corp., 463 Mass. 65, 73 (2012), quoting Calimlim v. Foreign Car Ctr., Inc., 392 Mass. 228, 236 (1984). “[Ojur consumer protection law was not intended to authorize duplicative recoveries for the same wrong.” Id. When either a judge or jury discernibly awards separate recoveries under G.L.c. 93A and another claim “based on the same act, one recovery is precluded, with preference given to retaining the c. 93A award.” Id., citing Calimlim, supra at 235-236. Notably, the G.L.c. 93A award was explicitly made for the breach of the warranty of habitability. The trial judge concluded that the offending conditions in the apartment were attributable to negligent attempts at repair and not to wilful conduct and, thus, did not multiply the damages. Damages for each *63 count were awarded for Zhao’s negligence in effecting repairs and in failing properly to notify the tenants of planned entries to make repairs.
We conclude that the damages for these two counts are duplicative, and vacate the damages award for $1,880.00 for the breach of the warranty of habitability.
4. The trial court’s findings on its award of attorney’s fees are insufficient. Zhao urges that the attorney’s fee award was excessive, and should be returned for recalculation and clarification in any event. We agree that the attorney’s fee award must be returned to the trial judge for further findings.
The trial judge reduced the requested fee of $30,914.11 to an award of $23,921.36.[7] He made no findings. Because a trial judge enjoys broad discretion when awarding attorney’s fees, we would reverse an award only for an abuse of that discretion. Board of Trustees of the Sea Grass Village Condominium v. Bergquist, 2009 Mass. App. Div. 132, 138 (“Sea Grass Village”). We accord due deference to the trial judge and do not substitute our judgment for his. Id. But at the same time, “ [t] he amount of a reasonable attorney’s fee is a fact that should be supported by some statement of reasons illuminating the judge’s fact-finding process.” Id., quoting Ross v. Continental Resources, Inc., 73 Mass. App. Ct. 497 (2009).[8]
Normally, the lodestar method of determining fees should govern unless there exist special reasons to employ another method. CJ/Queen Annes Gate Apartments v. Anderson, 2012 Mass. App. Div. 128, 129, citing, inter alia, Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993), and Siegel v. Berkshire Life Ins. Co., 64 Mass. App. Ct. 698, 706 (2005). Because the trial judge here did not refer to the lodestar method or other means of calculating the fees awarded, cf. id. at 130, we are unable to discern whether his “analysis of the request for attorney’s fees considered with insufficient precision the relationship between the fee requested and the results the litigation achieved, that is, whether the amount of time spent on the case was reasonable in light of those results.” Sea Grass Village, supra 138, quoting Killeen v. Westban Hotel Venture, LP, 69 Mass. App. Ct. 784, 795 (2007). We must return this aspect of the case to the trial judge for further orders consistent with this opinion.
5. Error in failing to award damages for retaliation. Finally, we turn to the tenants’ original appeal that alleged error by the trial judge in failing to find that Zhao had retaliated against them, under the terms of the statute, and for failing to award them damages for that violation.
The retaliation claim is governed by G.L.c. 186, §18,[9] which creates a presumption *64 of retaliation if a landlord seeks to terminate or “substantial[ly] alter[]” a tenancy within six months of a tenant’s engaging in any of several specified protected activities. The trial judge found that although Zhao had threatened the tenants with towing their vehicle, there was no evidence that the tenancy had been damaged, or even affected, as a result.
As noted above, the trial judge’s detailed findings of fact included findings that the lease had forbidden tenants’ parking a vehicle on certain premises, but also provided that if Zhao did allow parking, it would be at the tenant’s risk. The lease also disallowed “any live animal, bird, reptile or pet” in the apartment without Zhao’s written permission. From the start of the tenancy, however, Zhao was aware of both the parking and the pets.
When the relationship between the tenants and Zhao started to crumble in earnest, Zhao, as described above, warned the tenants to remove the animals immediately and to refrain from parking on the property. And in another e-mail, he threatened to have a certain car “towed now.” Not only was the car not towed, but the tenants continued to park as usual and the aquaria remained in the apartment until the tenancy ended. So finding, the trial judge concluded that because the lease itself had forbidden parking and pets, those terms dictated the tenancy and constituted clear and convincing evidence that Zhao’s actions did not constitute a reprisal. Zhao therefore had an independent justification for sending e-mails addressing those issues. Because Zhao had not altered Stacy’s parking or pets arrangements, no damage was shown. The trial judge found that retaliation had not been proved.
The tenants, however, noting that G.L.c. 186, §18 protects tenants not only from retaliation, but from threatened retaliation, see, e.g., Scofield v. Berman & Sons, Inc., 393 Mass. 95, 111 (1984); Haynes v. Crockett, 2009 Mass. App. Div. 178, 181, argue *65 that, in order to rebut by clear and convincing evidence the statutory presumption in their favor, Zhao would have been required to establish both that 1) he had sufficient independent justification for taking the action he did — the threatened alteration of a lease term — and that 2) he would have in fact taken that action, in the same manner and at the same time, had the tenants not gone to the board of health. Conceding Zhao had met the first prong of the test, as the judge explicitly ascertained, the tenants note that the judge did not go on to conclude that Zhao had met the second. In the absence of that finding, they argue, the presumption of reprisal stands, entitling the tenants to recovery for a threatened reprisal.
We are compelled to agree. The issue is not that any finding by the trial judge was erroneous. The point is that he did not find the second of the two prongs that Zhao must have satisfied in order to meet his “heavy evidentiary burden of rebutting the statutory presumption” (emphasis supplied). Jablonski v. Clemons, 60 Mass. App. Ct. 473, 478 (2004). Accepting that Zhao had a “sufficient independent justification” for sending the e-mails concerning the parking and pets — and threatening to tow the Subaru — in order to rebut the presumption, he must also have had to establish that he “would have in fact taken such action, in the same manner and at the same time the action was taken, regardless” of the tenants’ complaints to the board of health. G.L.c. 186, §18. The trial judge’s carefully crafted decision contains no such finding and, indeed, the trial transcript reflects no evidence on what such a finding could have been based. See Jablonski, supra at 477 (“ [A] s far as we can determine, the landlord failed to introduce any evidence on the issue of [his] motive for... [the e-mails] so quickly after the tenants engaged in their protected activity.”).
Section 18 provides that landlords who “threaten!] to... take[] reprisals... shall be liable for damages....” The use of the word “shall” in statutes means “mandatory” and not “permissive.” Spenlinhauer v. Spencer Press, Inc., 81 Mass. App. Ct. 56, 63 n.13 (2011), citing Wiedmann v. Bradford Group, Inc., 444 Mass. 698, 709-710 (2005). There is no authority for supposing that the mandate conveyed by the word “shaft” in §18 can confer discretion upon a trial judge.
Having found a violation of §18, the trial judge was obligated to award a recovery to the tenants, irrespective of the outcome of their other claims. Ianello v. Court Mgt. Corp., 400 Mass. 321, 323-325 (1987) (court erred in not awarding damages under §18 on basis that recovery already awarded for violation of G.L.c. 186, §14 [covenant of quiet enjoyment]; separate recoveries justified because sections address separate injuries; recovery under §18 designed to deter retaliation and encourage tenants to seek relief thereunder). But see Cruz Mgt. Co. v. Wideman, 417 Mass. 771, 773 n.3 (1994) (judge awarded tenant double rent for §18 violation and double breach of warranty of habitability damages; no issue as to these damages raised on appeal). As noted above, since it is uncontested that the tenants suffered no actual harm from Zhao’s threats, the damages awarded to them for Zhao’s violation of §18 must be between one month’s rent and three months’ rent. Scofield, supra at 115 n.26. For that determination, we return the action to this trial judge at Quincy District Court.
The award of $1,880.00 in damages to the plaintiff-tenants on their claim for breach of the warranty of habitability is vacated as duplicative, and an assessment of zero damages is to be entered on that claim. The trial court’s finding for Zhao on the claim against him for retaliation is reversed, and a finding for the tenants is to be entered on that claim. The court’s assessment of attorney’s fees is also vacated. This *66 case is returned to the Quincy District Court for a new assessment of attorney’s fees, with appropriate findings, and for an assessment of damages against Zhao for retaliation. The trial court’s findings on the remaining claims and counterclaims are affirmed.
So ordered.

 Zhao had counterclaimed against the tenants for breach of contract. The trial judge found no breach of contract on either claim.

 Zhao suggested that if this Appellate Division found that there was no settlement agreement in force when the tenants moved out, Zhao was at least entitled to four months’ rent since the tenants vacated the apartment four months before the end of the lease. We do not address that contention. The argument is not fully developed, and we are not inclined to alter the damages award when the settlement agreement issue was not properly preserved for appeal.

 The tenants’ counsel had billed 93.25 hours at $275.00 an hour for “Legal professional” and 45.6 hours at $75.00 for “Paralegal assistant,” plus $1,851.36 in expenses.

 That is generally true, and is especially so when an award ‘“appears on its face dramatically disproportionate to the results the litigation produced ... [in which case] the judge must focus with precision on the relationship between the time invested and the results achieved in order to insure that the “time spent was [not] wholly disproportionate to the interests at stake.’” [Killeen v. Westban Hotel Venture, LP, 69 Mass. App. Ct. 784 (2007)] at 796, quoting Stratos v. Department of Pub. Welfare, 387 Mass. 312, 323 (1982).” Sea Grass Village, supra at 138. Although Zhao suggested that the fee award is excessive, we do not find here that the award was necessarily “dramatically disproportionate” to the result of the case.

 General Laws c. 186, § 18 provides in pertinent part:
Any person ... who threatens to or takes reprisals against any tenant of residential premises for the tenant’s act of ... reporting to the board of health... a violation or a suspected violation of any health or building code ... shall be liable for damages which shall not be less than one month’s rent or more than three month’s [sic] rent, or the actual damages sustained by the tenant, whichever is greater, and the costs of the suit, including a reasonable attorney’s fee.
The receipt of any notice of termination of tenancy... or, of any substantial alteration in the terms of tenancy within six months after the tenant has ... made such report or complaint... shall create a rebuttable presumption that such notice or other action is a reprisal against the tenant for engaging in such activities. Such presumption shall be rebutted only by clear and convincing evidence that such person’s action was not a reprisal against the tenant and that such person had sufficient independent justification for taking such action, and would have in fact taken such action, in the same manner and at the same time the action was taken, regardless of tenants engaging in, or the belief that tenants had engaged in, activities protected under this section.